**COZEN O'CONNOR**
Valerie Rojas  (SBN 180041)
vrojas@cozen.com
Angel Marti, III  (SBN 305300)
amarti@cozen.com
601 South Figueroa Street, Suite 3700
Los Angeles, California  90017
Telephone:  (213) 892-7965
Facsimile:   (213) 784-9076

Attorneys for Plaintiff SCOTTSDALE INDEMNITY COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTTSDALE INDEMNITY COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE LATINO COALITION, a Delaware Corporation, and Hector Barreto,<br><br>Defendants. | Case No.:<br><br>**PLAINTIFF SCOTTSDALE INDEMNITY COMPANY'S COMPLAINT FOR DECLARATORY RELIEF** |

For its Complaint against Defendants The Latino Coalition, Inc. ("TLC") and Hector Barreto, Plaintiff Scottsdale Indemnity Company ("Scottsdale") states the following.

1. This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202, and 1332.

**PARTIES**

2. Scottsdale is an insurance company duly organized and existing under the laws of the State of Ohio with its principal office located in Scottsdale, Arizona.

3. TLC is duly organized and existing under the laws of the State of Delaware with its principal office located in Washington, D.C.  TLC previously had an office in Irvine, California, and Scottsdale issued the subject insurance policy to

1

COMPLAINT

LEGAL\52556706\1

TLC in Irvine, California.

4. Hector Barreto ("Barreto) is an individual who resides in Orange County, California, and is a citizen of the State of California.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Scottsdale and TLC, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1) because Barreto resides in this District and Division.

## FACTUAL ALLEGATIONS

### The Policy

7. Scottsdale issued claims-made-and-reported Business and Management Indemnity Policy number EKI3325509 (the "Policy") to TLC effective for the period from March 20, 2020 to March 20, 2021 (the "Policy Period"). A copy of the Policy is attached hereto as "Exhibit A." In its application for insurance, signed by Barreto on February 20, 2020, Defendants advised Scottsdale that TLC was located in Irvine, California and was not aware of any claims, or facts and circumstances that would give rise to any claims." TO: "In its application for insurance, signed by Barreto, Defendants advised Scottsdale that TLC was located in Irvine, California and was not aware of any claims, or facts and circumstances that would give rise to any claims.

8. Subject to its terms, conditions, and exclusions, the Policy provides coverage under the following coverage sections: (i) Employment Practices Coverage Section ("EP Coverage Section"); and (ii) Insured Person and Organization Coverage Section ("IPO Coverage Section"). Only the IPO Coverage Section is implicated in this action. The limit of liability for the IPO Coverage Section is $1 million.

9. In accordance with the IPO Coverage Section's Insuring Clause A., Scottsdale shall pay the Loss of the Insureds which the Insureds have become legally obligated to pay by reason of a Claim first made against any Insureds during the

Policy Period or, if elected, the Extended Period, and reported to Scottsdale pursuant to Section E.1. of the Policy, for a Wrongful Act taking place prior to the end of the Policy Period. (Ex. A at IPO Coverage Section § A.)

10. The Policy defines "Claim" to include, among other things, "a criminal proceeding against any Insured, commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges;" or "a civil, administrative or regulatory proceeding or a formal governmental investigation against any Insured commenced by the filing of a notice of charges, investigative order or similar document. (Ex. A at IPO Coverage Section § B(1)(c) and (e), as amended by Endorsements No. 22.)

11. "Wrongful Act" is defined in the Policy, in relevant part, to mean any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act, Publisher Liability Act or Personal Injury Act allegedly committed or attempted by any Insured, while acting in their capacity as such, or any matter claimed against any Insured Persons solely by reason of his or her serving in such capacity. (Ex. A at IPO Coverage Section § B(10) as amended by Endorsement 28.)

12. "Insureds" is defined in the Policy to mean the "Organization and the Insured Persons." (Ex. A at IPO Coverage Section § B(5).)

13. The Policy defines "Organization," in relevant part, to mean the "Parent Organization," which is defined in the Declarations to be TLC, and "any Subsidiary." (Ex. A at General Terms & Conditions § B(7) and Declarations at Item 1.)

14. "Insured Persons" is defined in the Policy to mean, in pertinent part, any person who was, now is, or shall become, a duly elected or appointed director, officer, trustee, volunteer, committee member or employee of the Organization and members of the Advisory Board of the Organization." (Ex. A at IPO Coverage Section § B(4)(a), amended by Endorsements No. 1 and 5.)

15. The Policy defines "Loss," in relevant part, Loss shall not include: (a) taxes, fines or penalties; (b) matters uninsurable under the laws pursuant to which the

3
COMPLAINT

Policy is construed; (c) punitive or exemplary damages, or the multiple portion of any multiplied damage award, except to the extent that such punitive or exemplary damages, or the multiple portion of any multiplied damage award are insurable under the internal laws of any jurisdiction which most favors coverage for such damages and which has a substantial relationship to the Insureds, Scottsdale, the Policy, or the Claim giving rise to such damages; (d) the cost of any remedial, preventative or other non-monetary relief, including without limitation any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement or governmental authority; (e) any amount for which the Insured is not financially liable or legally obligated to pay; (f) the costs to modify or adapt any building or property to be accessible or accommodating, or more accessible or accommodating, to any disabled person; and (g) any amounts owed or paid under any written or express contract or agreement.. (Ex. A § B(7).)

16. "Costs, Charges and Expenses" means reasonable and necessary legal costs, charges, fees and expenses incurred by any of the Insureds in defending Claims and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability and; b. cost of investigation. Costs, Charges and Expenses do not include salaries, wages, fees, overhead or benefit expenses of or associated with officers or employees of the Organization.. (Ex. A at IPO Coverage Section § B(3) as amended by Endorsement 22.) Costs, Charges and Expenses does not reduce the available limit of liability ($1 million).

17. Section F(1) of the IPO Coverage Section of the Policy states that it shall be the duty of Scottsdale and not the duty of the Insureds to defend any Claim. (Ex. A at IPO Coverage Section § F.(1).)

18. Section F.3 of the IPO Coverage Section provides that the Insureds agree not to, among other things, incur any Costs, Charges and Expenses with respect to any

1  Claim without the prior written consent of Scottsdale, such consent not to be
2  unreasonably withheld.  (Ex. A at IPO Coverage Section § F.(3).)
3      19.  Section F.4. of the IPO Coverage Section provides that the Insureds agree
4  to provide the Insurer with all information, assistance and cooperation which the
5  Insurer reasonably requests and agree that, in the event of a Claim, the Insureds will
6  do nothing that shall prejudice the position of the Insurer or its potential or actual
7  rights of recovery.  (Ex. A at IPO Coverage Section § F.(4).)

### The Subpoenas

9      20.  On February 20, 2020, on behalf of the U.S. Department of Justice
10 ("DOJ"), the U.S. District Court for the Western District of Texas issued Subpoenas
11 to Testify Before a Grand Jury (the "Subpoenas" ) to the following parties: Defendant
12 TLC; Hispanic Business Roundtable Institute PAC ("HBRPAC"); Hispanic Business
13 Roundtable Institute ("HBRI"); and The Latino Coalition Foundation (the
14 "Foundation").

### Scottsdale's Coverage Position

16     21.  On May 13, 2021, defendants TLC and Barreto (collectively
17 "Defendants") tendered the Subpoenas to Scottsdale for coverage under two
18 insurance policies including: (1) Policy No. EKI3331731 issued to Hispanic Business
19 Roundtable; and (2) Policy No.  EKI3331729 issued to Latino Coalition Foundation.
20 On May 17, 2021, Defendants tendered the Subpoenas to Scottsdale under Business
21 and Management Policy No. EKI3325509 issued to TLC.  Defendants advised that
22 they received the Subpoenas via email on April 14, 2020 and that they retained
23 counsel located in California to defend them with respect to the subpoenas.
24     22.  On May 18, 2021, Scottsdale emailed Defendants to acknowledge receipt
25 of Defendants' tender and the Subpoenas, and to request a phone call to discuss
26 Defendants' claim.  On May 18, 2021, Defendants' counsel requested that Scottsdale
27 instead set forth its questions in an email, which Scottsdale did.

23. On May 21, 2021, Scottsdale emailed Defendants to acknowledge receipt of their claim and advising of Scottsdale's agreement to provide a defense to Defendants under Policy No. EKI3325509 issued to TLC (i.e., the "Policy") and assigned defense counsel in Southern California given Barreto's location and the Defendants' prior selection of defense counsel located in California. Scottsdale asked that the Defendants' defense be transferred to assigned counsel.

24. On May 25, 2021, Scottsdale emailed Defendants to again request that Defendants' defense be transferred to counsel assigned by Scottsdale.

25. Also, on May 25, 2021, Scottsdale wrote to Defendants to advise of Scottsdale's defense arrangements, and to reserve rights concerning the application of certain Policy provisions. In particular, Scottsdale reserved rights on the definition of who is an Insured under the Policy, the definition of Loss under the Policy, and the Policy's Limit of Liability.

26. On May 27, 2021, Defendants wrote to Scottsdale to demand that either Scottsdale pay for counsel that Defendants selected to defend Defendants or pay for independent counsel as well as assigned defense counsel to defend Defendants with respect to the subpoenas.

27. On June 1, 2021, Scottsdale requested additional documents and information from Defendants to ascertain, among other things, whether there was a Claim made against Barreto, pursuant to the definition of Claim under the Policy, when Defendants first learned of the investigation, and how Defendants had responded to the Subpoenas issued in February 2020.

28. On June 2, 2021, Defendants refused to provide the documents and information Scottsdale request. Defendants advised Scottsdale that they would not provide any additional documents and information until Scottsdale agreed to either pay for Defendants' choice of counsel, or agree to pay for both assigned counsel and Defendants' chosen "independent counsel." Defendants further advised that

independent counsel would then be empowered to determine what documents to provide to Scottsdale.

### COUNT I – DECLARATORY JUDGMENT AS TO APPLICATION OF DEFINITION OF CLAIM

29. Scottsdale hereby adopts and incorporates by reference the allegations contained in paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30. An actual, present, and justiciable controversy exists between Scottsdale and Defendants concerning whether Barreto has tendered a Claim against him to Scottsdale, and whether Scottsdale has a duty to defend Barreto with respect to the Subpoena issued to TLC pursuant to the Policy's definition of Claim.

31. Scottsdale requests that the Court declare that, pursuant to the definition of Claim, Barreto has not tendered a Claim made against him to Scottsdale and there is no coverage under the Policy for Barreto with respect to the Subpoena issued to TLC.

32. Scottsdale requests that the Court declare that, pursuant to the definition of Claim, Scottsdale is not required to provide a defense or independent counsel to Barreto as he has not tendered a Claim made against him to Scottsdale.

### COUNT II – DECLARATORY JUDGMENT AS TO DUTY TO PAY FOR INDEPENDENT COUNSEL

33. Scottsdale hereby adopts and incorporates by reference the allegations contained in paragraphs 1 through 32 of this Complaint as if fully set forth herein.

34. An actual, present, and justiciable controversy exists between Scottsdale and defendants concerning whether Scottsdale is obligated to pay for Defendants' independent counsel under California Civil Code 2860 or any other law.

35. Scottsdale requests that the Court declare that Scottsdale is not obligated to pay for Defendants' independent counsel.

36. Specifically, Scottsdale requests that the Court declare the following: (1) that Scottsdale's reservation of rights letter did not create an actual conflict of interest under California Civil Code § 2860; (2) that Scottsdale has the right to appoint counsel to represent TLC and Barreto (in the event or to the extent a Claim is made against him as defined in the Policy) with respect to the Subpoena; (3) that Defendants have a duty to cooperate with Scottsdale with regard to all aspects of the Subpoena and their claims, including providing documents and information to Scottsdale, and cooperating with Scottsdale's appointed counsel in their defense of the Subpoena; and (4) that Scottsdale does not have any liability under the Policy or otherwise to pay or reimburse any fees and costs incurred by separate counsel retained by any or all of the Defendants.

## COUNT III – DECLARATORY JUDGMENT AS TO DEFENDANTS' FAILURE TO COOPERATE

37. Scottsdale hereby adopts and incorporates by reference the allegations contained in paragraphs 1 through 36 of the Complaint as if fully set forth herein.

38. An actual, present, and justiciable controversy exists between Scottsdale and Defendants concerning whether Defendants complied with their duties under the Policy to cooperate with Scottsdale and provide the information and documents Scottsdale requested for its claim investigation.

39. Scottsdale's claim investigation has been prejudiced by Defendants' failure to provide the information and documents Scottsdale reasonably requested. Specifically, Scottsdale has not been provided with a Claim against Barreto or information concerning when Defendants first learned of the investigation.

40. Scottsdale requests that the Court declare that there is no coverage under the Policy for Defendants with respect to the Subpoena based upon Defendants' breach of their duties to cooperate with Scottsdale in its claim investigation

## PRAYER FOR RELIEF

WHEREFORE, Scottsdale prays that this Court enter an Order:

1. declaring that, pursuant to the definition of Claim under the Policy, there is no coverage under the Policy for Barreto in connection with the Subpoenas;

2. declaring that Scottsdale is not required to pay for Defendants' independent counsel in connection with the Subpoenas;

3. declaring that, pursuant to the application of the Condition to cooperate, there is no coverage under the Policy for Defendants in connection with the Subpoenas;

4. awarding Scottsdale its costs and expenses to the greatest extent allowed by law; and

5. awarding Scottsdale all other relief that the Court deems just and equitable.

Dated: June 3, 2021                                COZEN O'CONNOR

                                           By: _____
                                               Valerie D. Rojas
                                               Attorney for Plaintiff SCOTTSDALE INDEMNITY COMPANY